LESLIE STRONG et al., Appellants-Respondents, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 41602.)

Third Department, February 24, 1972.

242

*McClung, Peters & Simon* (*Homer E. Peters* and *Livingston T. Coulter* of counsel), for appellants-respondents.

*Louis J. Lefkowitz, Attorney-General* (*Dennis Hurley* and *Ruth Kessler Toch* of counsel), for respondent-appellant.

COOKE, J. These are cross appeals from a judgment in favor of claimants, entered September 2, 1966, upon a decision of the Court of Claims awarding $58,972, with interest, for the appropriation of claimants' land in Cortland County, pursuant to section 30 of the Highway Law.

Claimants, partners doing business under the name of Cortland Ready-Mix Concrete Company, owned 14.043 acres on the east side of Clinton Avenue at the intersection of Clinton and Locust Avenues in the City of Cortland and 8.814 acres on the west side of Locust Avenue near said intersection. On the westerly or smaller parcel were located a processing plant and a ready-mix concrete plant and on the easterly or larger tract was a deposit of sand and gravel used as a source of material for the operation of said plants. On August 7, 1958 the State appropriated the entire larger parcel and the Court of Claims awarded, besides interest, $56,172 for direct damage, being the found value of the 14.043 acres, and $2,800 for consequential damages to the remainder, the premises upon which the plants were located. Claimants now limit their appeal to an alleged insufficiency of the consequential damage award, resulting from the court's refusal to consider damages to claimants' sand and gravel processing equipment and ready-mix concrete equipment. In an explanatory letter received subsequent to argument, it is stated on behalf of the State of New York in effect that it seeks no recovery on its counterclaim but urges a deletion of the $2,800 consequential damages from the judgment.

The $2,800 consequential damage item is based essentially on the difference in the fair and reasonable market value of claimants' westerly land before and after the taking. The Court of Claims found that the highest and best use of said land before appropriation was as a location for a sand and gravel processing plant and a batch plant, used conjunctively with the land appropriated, and that said remaining land sustained consequential damage as a result of removal of the source of materials, the highest and best use of the westerly tract remaining being for continued use as a batch plant only. Although the State suggests that the " temporary " supply of gravel is not an integral part of a processing plant so as to provide unity of use, there was a diminution in value of the remaining land resulting from the appropriation which was compensable (*Feres* v. *State of New York*, 24 A D 2d 661; 4A Nichols, Eminent Domain [3d ed.], §§ 14.1, 14.2; cf. *Cooney Bros.* v. *State of New York*, 24 N Y 2d 387, 392–393). Even though the parcels were not contiguous and were separated by highways, the gravel having been hauled 700 feet from the source on one place to the plant feeder on the other (cf. *Guptill Holding Corp.* v. *State of New York*, 43 Misc 2d 631, 634, affd. 23 A D 2d 434, mot. for lv. to app. den. 16 N Y 2d 484; *Queensboro Farm Prods.* v. *State of New York*, 6 Misc 2d 445, 449, affd. 5 A D 2d 967, affd. 5 N Y 2d 977),

there was evidence establishing that there was unity of title and unity of use, an essential predicate to an award (*Ephraim Holding Corp.* v. *State of New York,* 30 A D 2d 623). The fact that the gravel on the larger site was depletable did not alter the unity of use status (cf. *Cooney Bros.* v. *State of New York, supra*).

Claimants purchased a Meisner property in November, 1958, began using it as a gravel source in 1960 and stopped hauling from the pit thereon to the Locust Avenue plant in 1964, assertedly because they were losing money with the operation due to increased costs of hauling five or six and one-half miles, depending on the route taken. In July of 1964 claimants began erecting a processing plant on the Meisner location, moving to said site part of the Locust Avenue processing plant. The remainder of said Locust Avenue plant was left in running condition and claimants estimated that it would be used less than a month a year. Since, when land occupied for business purposes is taken by eminent domain, the owner or occupant is not entitled to recover compensation for destruction of his business or injury thereto by its necessary removal from its established location (*Banner Milling Co.* v. *State of New York,* 240 N. Y. 533, 540; *Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583, 587; 4 Nichols, Eminent Domain [3d ed.], §§ 13.3, 13.32), claimants cannot recover for their increased trucking costs in transporting excavated materials from a new and more distant source.

Obviously, it is not proper to include damages for those alterations, extensions or additions to the land made subsequent to the taking (cf. *Wolfe* v. *State of New York,* 22 N Y 2d 292, 295), but the value of prior built fixtures, unless the appropriation is qualified when made, must be considered in determining the total value of the property appropriated (*Marraro* v. *State of New York,* 12 N Y 2d 285, 292). In *Rose* v. *State of New York* (24 N Y 2d 80), it was held that " the machinery, if removed or if it could be successfully removed, should be also valued by determining either the actual or contemplated costs of disassembling, trucking and reassembling the item at a new location. If the cost of removal is less than the difference between salvage value and present value in place, this is all that claimant is entitled to recover " (p. 88) and that, in the event " the property is moved, without notice to the State, the claimant will not be able to receive compensation for these structures as fixtures unless the State forced the premature removal of the property * * * or the property can be

clearly shown to have been a fixture at the time of removal" (pp. 88–89). When *Rose* was before this court (29 A D 2d 1003) we held that the conveyors, hoppers, crushers and screens, the same type of machinery as moved to the Meisner place here, were fixtures (see *Vitale* v. *State of New York,* 33 A D 2d 977, mot. for lv. to app. den. 26 N Y 2d 861). But unlike the situation in *Rose* and *Cooney,* since these claimants continued and intended to continue to use the Locust Avenue plants, even though that use be greatly decreased, they should not be permitted to recover damages for these unmoved fixtures.

As to the fixtures which were moved, claimants are entitled to recover the difference between salvage value and the then present value in place or the cost of disassembling, trucking and reassembling the items at the new location, whichever is the lesser (*Cooney Bros.* v. *State of New York,* 24 N Y 2d 387, *supra*) but this cannot be determined from the record.

The judgment should be modified, on the law and the facts, by directing a new trial solely on the issue of damages sustained by claimants in respect to the fixtures removed to the Meisner site and, as so modified, affirmed, without costs.

HERLIHY, P. J., GREENBLOTT, SWEENEY and SIMONS, JJ., concur.

Judgment modified, on the law and the facts, by directing a new trial solely on the issue of damages sustained by claimants in respect to the fixtures removed to the Meisner site and, as so modified, affirmed, without costs.